# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| EVERETTE HILL-MCAFEE, | ) |
| | ) |
| Petitioner, | ) |
| v. | ) Case No. 4:20-cv-01264-SEP |
| | ) |
| MICHELE BUCKNER, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

Before the Court is Petitioner Everette Hill-McAfee's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. [1]. For the reasons set forth below, the petition is denied.

### FACTS AND BACKGROUND

The Missouri Court of Appeals described the pertinent facts as follows:

> Victim was born in 1998, and lived with Mother and his younger sister in St. Louis until the summer after his fifth-grade graduation in 2011. At this time, Victim went to live with [Petitioner] (his father) in St. Louis until sometime in 2013. After staying with his aunt and grandmother for a brief period of time, he moved to Ohio to live with Mother. When Victim moved to Ohio to live with Mother, Victim told Mother that [Petitioner] made him participate in several different sexual activities with [Petitioner] and [Petitioner]'s sexual partners. Mother contacted the police and took Victim to a Child Advocacy Center where he was interviewed. [Petitioner] and two of his female sexual partners, Niesha Hampton [] and [Paris] Powell, were subsequently arrested and charged with various crimes: statutory rape, sodomy, deviate sexual intercourse with a person less than fourteen years old, and child molestation. At [Petitioner]'s trial, Victim, Mother, and Powell all testified against [Petitioner].

### A. Victim's Testimony:

> Victim testified about the sexual abuse he suffered while he lived with [Petitioner]. He stated that starting around the time he was eleven, [Petitioner] would sometimes order him to participate in sexual activity with one of his two sexual partners. In describing the first time Victim was sexually abused, Victim asserted that he, [Petitioner], and Hampton were watching a movie when [Petitioner] and Hampton began to kiss. Victim left the room, but [Petitioner] called him back and asked, "Do you want to get in on this?" Victim told him "no," but [Petitioner] told him to take his pants off. Victim testified that he took his pants off because he believed if he did not listen to his father, [Petitioner] would grab him and forcibly remove his pants. After Victim removed his pants,

[Petitioner] directed him to put his penis in Hampton's mouth while [Petitioner] and Hampton engaged in intercourse. The encounter ended when Victim ejaculated and left the room to clean himself off. Victim testified that afterwards he kept thinking "what just happened?" and "why did [Petitioner] make me do this?"

A couple of months after the first incident, [Petitioner] called Victim into a room and told him to suck on Hampton's nipples and lick her vagina. [Petitioner] again directed Victim to take off his pants and put his penis in Hampton's vagina, which Victim did. Victim testified that the third incident occurred when [Petitioner] and Hampton were engaging in sexual activity on a bed, and [Petitioner] called Victim in and told him to suck on Hampton's nipples and vagina. Victim stated he did so, but he did not take his pants off.

[Petitioner] later forced Victim to engage in similar sexual activity with Powell. Victim stated he was twelve or thirteen when he had his first sexual encounter with Powell and [Petitioner]. Both Victim and Powell testified that [Petitioner] told Victim to put his penis inside Powell's mouth, even though both Victim and Powell stated they did not want to do so. Each also stated that Powell got on top of Victim and sucked his penis while [Petitioner] had intercourse with Powell. On a different occasion, when Victim was thirteen, he testified that, while [Petitioner] was having sex with Powell, he told Victim to put his penis in Powell's mouth.

Victim testified there were other times when his father invited him to participate in sexual activities with him and one of his girlfriends, but Victim would decline and [Petitioner] allowed him to leave. However, there were times when Victim would decline to participate but his father would still pressure him and "say to do it." Victim explained that he did not tell anyone about the sexual assaults until he was living with his Mother in Ohio because he "always keeps secrets," and he believed secrecy was necessary to protect himself from [Petitioner], whom he and Powell both characterized as "aggressive" at times. Victim testified that if he did not listen to [Petitioner], then [Petitioner] would either yell at him, give him warnings, smack him, or "get mad and start hitting" him.

B.  **Mother's Testimony:**

Mother told the jury about the timeline of Victim's childhood, how he had lived with her up until he was ten or eleven and then moved in with [Petitioner]. She stated that [Petitioner] was not around a lot when Victim was a small child. She further testified that while she had supervised visitation with Victim while he lived with [Petitioner], she only saw him once, even though she came to visit him multiple times. She explained that she did not have the money to pay an attorney to sort out the custody issues.

C.  **Powell's Testimony**:

In addition to the testimony described above, during Powell's examination, the prosecutor asked her if [Petitioner] had ever made any statements to her about something that happened in her childhood. The court

>   allowed Powell to respond, over Defense Counsel's objection, that [Petitioner] knew she had been sexually molested as a child, and while they were having sex would ask "if I liked how I was being molested, you know, just to, I guess, get his nut off, and I didn't like that."

*State v. Hill-McAfee*, 522 S.W.3d 343, 346-47 (Mo. Ct. App. 2017); Doc. [8-5] at 2-4.

Petitioner was convicted of one count of first-degree statutory rape, two counts of first-degree statutory sodomy, and two counts of second-degree statutory sodomy and sentenced to 25 years in prison. *Hill-McAfee*, 522 S.W.3d at 345-47. Petitioner appealed directly from that judgment, claiming that that the trial court erred and abused its discretion by overruling his counsel's objections to three pieces of testimony: (1) the victim's mother's testimony that Petitioner, "had intermittent contact with [the victim] when he was little," (2) the mother's testimony that "she had not been in a position to hire an attorney to deal with [the victim's] custody arrangement," and (3) Powell's testimony that Petitioner "told her during intercourse that she enjoyed being molested as a child." *Id.* at 346. The Missouri Court of Appeals rejected Petitioner's three claims and affirmed the trial court's judgment. *Id*. at 351. Petitioner filed a Missouri Supreme Court Rule 29.15 motion for post-conviction relief. The circuit court denied the motion, Doc. [8-10] at 44, and the Missouri Court of Appeals affirmed the court's denial of post-conviction relief. Doc. [8-11] at 7. Petitioner now seeks habeas corpus relief in this Court pursuant to 28 U.S.C. § 2254.

## LEGAL STANDARD

"In the habeas setting, a federal court is bound by the [Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). For a federal court to grant an application for a writ of habeas corpus, the petitioner must show that the state court's adjudication on the merits:

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). A determination of a factual issue made by a state court is presumed correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. *Id.* § 2254(e)(1).

3

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases,' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). An unreasonable application of clearly established Supreme Court precedent occurs where "the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts" of the case. *Williams*, 529 U.S. at 407. A state court's decision may be deemed an unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)); *Boyd v. Minnesota*, 274 F.3d 497, 501 n.4 (8th Cir.2001)).

## DISCUSSION

Petitioner asserts two grounds for relief in his habeas petition. In Ground One, Petitioner claims that the trial court "abused its discretion" when it overruled his counsel's objection to two pieces of testimony by the victim's mother. He argues that the "improper admission of this evidence was so prejudicial that it deprived [P]etitioner of a fair trial." Doc. [1] at 8. In Ground Two, Petitioner claims "his 5th Amendment right was violated because he was not given the opportunity to testify at trial because he relied on defense counsel's erroneous advice." *Id*. The Court will construe this claim as one for ineffective assistance of counsel.

**A. Ground One**

In Ground One, Petitioner claims that the trial court deprived him of a fair trial by admitting two pieces of testimony from the victim's mother: (1) that "[P]etitioner only had intermittent contact with the victim when he was little," and (2) that the victim's mother "had not been in a position to hire a lawyer to deal with victim's custody issues." Doc. [1] at 8. The Missouri Court of Appeals found that the trial court did not abuse its discretion in admitting the testimony. Regarding the first piece of testimony, the court found that "the probative value of Mother's statements are not outweighed by any prejudicial value," and the "prejudicial value, or the risk of the jury assuming from this testimony that Defendant was a bad father and holding it against him when determining his guilt, is *de minimis*." Doc. [8-5] at 6. And as to the second piece of testimony, the court found that it "helped the jury understand the circumstances surrounding the events and get a complete picture of the charged crimes." *Id*. at 8. Thus, the

4

evidence was "logically and legally relevant" and "admitting it was not an abuse of discretion." *Id.* at 8-9. As a threshold matter, the Court finds that the Missouri Court of Appeals adjudicated Petitioners claim "on the merits" within the meaning of § 2254(d). *See Johnson v. Williams*, 568 U.S. 289, 301 (2013).

Because the Court of Appeals adjudicated his claim on the merits, Petitioner cannot obtain habeas relief under § 2254(a) unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law" under § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2). Respondent argues that Petitioner "merely invites this Court to consider his evidentiary claim as if the state court had never decided the claim unfavorably." Doc. [8] at 16. But a "petition filed by a *pro se* petitioner should be interpreted liberally and should be construed to encompass any allegation stating federal relief." *Harris v. Wallace*, 984 F.3d 641, 647 (8th Cir. 2021) (cleaned up) (quoting *Jones v. Jerrison*, 20 F.3d 849, 853 (8th Cir. 1994)). Although Petitioner does not identify a specific federal law or constitutional provision in Ground One, his claim that he was "deprived of a fair trial" is enough to "give adequate notice of the substance of [Petitioner's] claim" under the Due Process clause of the Fourteenth Amendment. *Harris*, 984 F.3d at 647. Defendant's rebuttal of the claim shows as much. *See* Doc. [8] at 16-23.

"Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process." *Rousan v. Roper*, 436 F.3d 951, 958 (8th Cir. 2006) (quoting *Logan v. Lockhart*, 994 F.2d 1324, 1330 (8th Cir. 1993)). To establish a denial of due process, Petitioner must "prov[e] that the asserted error was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [the petitioner] of fundamental fairness.'" *Logan*, 994 F.2d at 1330 (quoting *Ferguson v. Jones*, 905 F.2d 211, 213 (8th Cir. 1990)). Petitioner has not met that burden for either piece of testimony.

Petitioner does not explain how the admission of the evidence was prejudicial, *see* Doc. [1] at 8, but his arguments in the Missouri Court of Appeals provide insight into his claim. There, Petitioner argued that the mother's testimony about Petitioner's limited contact with the victim when the victim was a small child was irrelevant and portrayed Petitioner as a "deadbeat

5

dad." Doc. [8-5] at 6. The court rejected this argument because the mother "did not testify Defendant was a 'deadbeat dad' or uninvolved in his son's life," so the "prejudicial value" was "*de minimis*." *Id.* The Court agrees. This testimony did not fatally infect the trial; the state did not even raise it in closing argument. *See* Doc. [8] at 19.

Petitioner's argument about the second piece of testimony fares no better. In the court of appeals, Petitioner argued that the mother's testimony that she could not afford a lawyer during the custody battle "'impeach[ed] [his] character as a cruel dad who would illegally bar a mom's visitation rights with their son,' thereby 'soften[ing] the jurors to believe that [Defendant] was . . . capable of doing something "disgusting" and "unimaginable" with [Victim].'" Doc. [8-5] at 8 (second through fifth alterations in original). The Missouri Court of Appeals held that the testimony about the mother's custody over the victim was relevant because it "served to corroborate Victim's testimony" about why he did not tell his mother about the abuse for three years. *Id.* The court commented that, if anything, "evidence of a 'custody dispute' in which the judicial system favored [Petitioner] having custody of Victim over Mother would positively impact the jury's view of [Petitioner's] character." *Id.* The Court agrees and sees no evidence that the testimony deprived Petitioner of a fair trial. Accordingly, the Court denies Ground One in Mr. Hill-McAfee's Petition.

**B. Ground Two**.

In Ground Two, Petitioner alleges that "his 5th Amendment right was violated because he was not given the opportunity to testify at trial because he relied on defense counsel's erroneous advice regarding propensity evidence." Doc. [1] at 8. Petitioner specifically cites counsel's advice that, "if he expressed his right to testify, that the jury would hear about a prior rape allegation and that petitioner would be subjected to cross-examination regarding this alleged misconduct." *Id.* at 9. Respondent argues that Ground Two has been procedurally defaulted. The Court agrees with Respondent.

"Ordinarily, a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Arnold v. Dormire*, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (quoting *Beaulieu v. Minnesota*, 583 F.3d 570, 573 (8th Cir. 2009)). "Missouri procedure requires that a claim be presented 'at each step of the judicial process' in order to avoid default." *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994) (quoting *Benson v. State*, 611 S.W.2d 538, 541

6

(Mo. Ct. App. 1980)). "Failure to raise a claim on appeal from the denial of a post-conviction motion erects a procedural bar to federal habeas review." *Id*. (citing *Gilmore v. Armontrout*, 861 F.2d 1061, 1065 (8th Cir. 1988)).

Petitioner raised an ineffective assistance of counsel claim against his trial counsel in his amended Rule 29.15 motion for post-conviction relief. Petitioner argued that he "was not given an opportunity to testify at trial as [he] relied on trial counsel's erroneous advice regarding propensity evidence, and therefore did not voluntarily waive his right to testify." Doc. [8-10] at 26. He explained that he wanted to testify at his trial, but his trial counsel "told [him] not to" because "if he exercised his right to testify, the jury would hear about the rape allegation as the State would subject him to cross examination regarding this alleged misconduct." *Id*. at 28. "[I]f he had not been misadvised," Petitioner claimed, "he would have testified at his trial." *Id.* at 41.

The motion court rejected that argument, and Petitioner appealed the decision. But in the Missouri Court of Appeals, Petitioner raised a different version of the claim. Instead of arguing that his lawyer told him he should not testify because the rape allegation *was* going to be admitted into evidence, Petitioner complained that his trial counsel had advised him that the "rape arrest *was not* going to be admitted into evidence." Doc. [8-7] at 8 (emphasis added). In his reply brief to the appeals court, Petitioner argued that the claim had not changed, because it was a general complaint that he "was not given an opportunity to testify at trial as [he] relied on trial counsel's erroneous advice regarding propensity evidence." Doc. [8-9] at 7 (alteration in original) (quoting Doc. [8-10] at 26). Trial counsel "misadvised, misinformed, and failed to inform him on the full implications of this uncharged prior bad act to his prospective trial testimony." *Id*.

The record undermines Petitioner's attempt to recharacterize his ineffective assistance claim. The headings in Petitioner's Rule 29.15 motion appeal brief, Doc. [8-7], may cast the argument in broad terms, but a side-by-side comparison of the substance reveals that Petitioner's two arguments were contradictory:

| **Motion Court Brief, Doc. [8-10]** | **Appeals Court Brief, Doc. [8-7]** |
|---|---|
| "When Movant expressed to trial counsel his desire to testify in his own defense, counsel told Movant not to." Doc. [8-10] at 28. | "[Trial counsel] never told [Petitioner] not to testify and instead advised him that his 2000 rape arrest could not come in." Doc. [8-7] at 17. |

7

| | |
|---|---|
| "Counsel advised Movant that if he exercised his right to testify, the jury would hear about the rape allegation as the State would subject him to cross examination regarding this alleged misconduct."  Doc. [8-10] at 29. | "[T]rial counsel was seemingly advising [Petitioner] there was no danger in testifying."  Doc. [8-7] at 17. |
| "Movant was left with the continued impression based on trial counsel's earlier statement that were he to exercise his right to testify, the 2000 rape allegation would come into evidence."  Doc. [8-10] at 30. | "[T]rial counsel was patently incorrect to advise [Petitioner] that the trial court's ruling *in limine* prohibiting admission of his prior arrest as propensity evidence meant this evidence could not be admitted should he testify."  Doc. [8-7] at 17. |
| "A reasonably competent attorney representing Movant under these circumstances would not have erroneously advised Movant that the 2000 rape allegation would have been used against him at trial if he testified."  Doc. [8-10] at 31. | "[T]rial counsel's contrary advice that [Petitioner's] 2000 rape arrest could not come in because of the trial court's ruling was erroneous."  Doc. [8-7] at 15 |

The Missouri Court of Appeals recognized the difference, finding that Petitioner had "abandoned any attempt at post-conviction relief based on the claim that counsel told him, erroneously, that the prior rape allegation would come in and that is why he decided not to testify at trial."  Doc. [8-11] at 4.  That "abandoned" claim is exactly what Petitioner raises in his § 2254 petition.  But because he did not present the claim "at each step of the judicial process," the claim is defaulted.  *Benson*, 611 S.W.2d at 540 (citing *State v. Wickizer*, 583 S.W.2d 519 (Mo. 1979) (en banc)).

Petitioner argues that his claim was not defaulted because "the State court disregarded the procedural default rule and ruled on the merits of the federal claim."  Doc. [1] at 10 (citing *Harris v. Reed*, 489 U.S. 255 (1989); *Niederstadt v. Nixon*, 505 F.3d 832 (8th Cir. 2007)). Petitioner is correct that "[w]hen a state court decides an issue on the merits despite a possible procedural default, no independent and adequate state ground bars consideration of that claim by a [federal] habeas court."  *Niederstadt*, 505 F.3d at 835 (second alteration in original) (quoting *Sweet v. Delo*, 125 F.3d 1144, 1150 (8th Cir. 1997)).  But that is not what happened with respect to the argument Petitioner makes here as Ground Two of his Petition.  What the Missouri Court of Appeals addressed on the merits was the *second* version of Petitioner's ineffective assistance claim—i.e., "the new assertion on appeal that Movant relied on counsel's advice that [the past rape allegation] was *inadmissible* when deciding not to testify."  Doc. [8-11] at 6.  Speaking to

8

the merits of *that* argument, the appeals court found "nothing in this record to support this counterintuitive claim." *Id.* at 7.

The Missouri Court of Appeals did not reach the merits of Petitioner's Ground Two, finding that Petitioner had "abandoned any attempt at post-conviction relief based on the claim that counsel told him, erroneously, that the prior rape allegation would come in and that is why he decided not to testify at trial." *Id.* at 4. Because Petitioner did not raise Ground Two in the Missouri Court of Appeals and that court did not address Ground Two on the merits, the claim is procedurally defaulted.

## II.     Certificate of Appealability

The Court finds that Mr. Hill-McAfee has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability can issue. 28 U.S.C. § 2253(c); *see also Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (a "substantial showing" is a showing that the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Thus, the Court will not issue a certificate of appealability as to any claims raised in Mr. Hill-McAfee's § 2254 petition.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Everette Hill-McAfee's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, Doc. [1], is **DENIED**.

**IT IS FURTHER ORDERED** that the Court shall **NOT ISSUE** a certificate of appealability as to any claim raised in Mr. Hill-McAfee's § 2254 Petition.

A separate Judgment accompanies this Memorandum and Order.

Dated this 25th day of September, 2023.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE